Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## OPINION

No. 04-09-00446-CR

Philip Andrew **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A08-550
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Rebecca Simmons, Justice

Delivered and Filed:  July 7, 2010

AFFIRMED

Phillip Andrew Garcia appeals the trial court's denial of his motion to suppress. We affirm.

### BACKGROUND

Garcia was charged with possession of marijuana in a drug free zone in an amount more than two ounces but less than four ounces. At the hearing on his motion to suppress, only Mike

Baker, an investigator with the Kerrville Police Department assigned to the special crimes unit, testified.

According to Investigator Baker, on October 7, 2008, at 11:30 p.m., he received a phone call from Sergeant Kenneth Cleghorn, who informed him that Christian Gonzales had been arrested for possession of marijuana and wanted to speak to investigators. In response to the call, Investigator Baker went to the scene and interviewed Gonzales. Gonzales offered to purchase marijuana from a man known as Kermit Compton. Investigator Baker knew Gonzales and had used him before as a cooperating individual. According to Investigator Baker, Gonzales had proven to be credible and reliable in the past. Investigator Baker was also familiar with Kermit Compton; in January 2008, using Gonzales, Baker "had done a controlled delivery from Kermit Compton."

According to Investigator Baker, Gonzales called Kermit Compton on his cell phone. After finishing the phone call, Gonzales told Investigator Baker that Compton had agreed to sell him marijuana, but first needed to get some marijuana from Jesus "Chuy" Gonzales. Investigator Baker testified that the department had "received prior information that Mr. Compton and Mr. [Jesus 'Chuy'] Gonzales were in partnership together selling drugs." Thus, Investigator Baker decided to attempt a "controlled delivery."

Investigator Baker then testified that Gonzales received a phone call from Compton, who said that he had the marijuana available and wanted to meet Gonzales at Gonzales's house. Investigator Baker testified, "[Compton] just said to meet him there at the residence. There was no actual time frame given. So we loaded up into our vehicles and we headed to the location." While they were headed to Gonzales's house, Gonzales received another phone call from Compton. According to Investigator Baker, Gonzales told Compton that because Gonzales was

riding a bicycle, it would take him about fifteen minutes to get home. Investigator Baker testified that the officers were hoping to get to Gonzales's home in time to set up surveillance before Compton's arrival.

However, when Investigator Baker and Sergeant Cleghorn arrived at Gonzales's home, they saw a white Ford pickup and a blue Chevy two-door parked on the right-hand side of the curb. So, they drove past the home. When they turned around and came back, their headlights illuminated the inside of the Chevy. Investigator Baker testified that he saw the driver, whom he did not recognize, and a passenger whom he did recognize as Kermit Compton. The driver was later identified as Appellant Garcia.

Investigator Baker testified that he radioed Investigator Dagenhart, who was with Gonzales in another vehicle, and informed him that Compton was already at the house, Investigators Baker and Dagenhart then tried to decide how they "were going to deploy the confidential informant," Gonzales. Dagenhart was with Gonzales in another vehicle. As Investigator Baker and Sergeant Cleghorn were driving past the house, considering what to do, they saw the headlights of the Chevy turn on. The Chevy, driven by Garcia, turned into a driveway, backed up, and started to leave. According to Investigator Baker, he knew Compton was supposed to sell marijuana to Gonzales at that location, the vehicle was there, and he had seen Compton in the vehicle. So, Investigator Baker decided to stop the Chevy. The Chevy had three occupants: Compton was in the front passenger seat, Garcia was in the driver's seat, and a male juvenile was in the back seat.

Investigator Baker testified that he made all three occupants get out of the car. Investigator Baker then conducted a pat-down search of the men, but did not find anything. According to Investigator Baker, Sergeant Cleghorn then went into the vehicle and saw a three-

pound Folgers coffee can on the passenger side floorboard. Investigator Baker testified that due to their training and experience, both he and Sergeant Cleghorn knew that people who traffic narcotics like to use items like coffee and mustard to mask the odor of marijuana. Investigator Baker testified that Gonzales had ordered a half-ounce of marijuana, worth about $60, which would fit perfectly in a three-pound coffee can.

Sergeant Cleghorn opened the can, which had a plastic lid on it but did not have a seal. Sergeant Cleghorn then pushed his finger down into the coffee, felt a plastic bag, and pulled it out. The plastic bag contained marijuana. Garcia was then advised of his Miranda rights and was taken to the police station where he spoke with officers. Garcia was later indicted for possession of marijuana in a drug free zone.

After hearing Investigator Baker's testimony and arguments of counsel, the trial court denied Garcia's motion to suppress. In accordance with a plea-bargain agreement, Garcia then pled guilty to possession of marijuana in a drug-free zone and was placed on deferred adjudication for one year and fined $500.00. He now appeals the trial court's denial of his motion to suppress.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, No. PD-0307-09, 2010 WL 715253, at *3 (Tex. Crim. App. Mar. 3, 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 2010 WL 715253, at *3; *Carmouche*, 10 S.W.3d at 327. As the sole trier of fact during a suppression hearing, the trial court may believe or disbelieve all or any part of a witness's testimony. *Wilson*, 2010 WL

715253, at *3; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Furthermore, we examine the evidence in the light most favorable to the trial court's ruling. *Wilson*, 2010 WL 715253, at *3; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

### DISCUSSION

In his first issue, Garcia argues that the trial court erred in overruling his hearsay objection to Investigator Baker's testimony about Gonzales's phone conversation with Compton. Assuming but not deciding whether the testimony at issue was hearsay, we note that a trial court is permitted to rely on hearsay testimony in determining preliminary questions concerning the admissibility of evidence. *See Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (explaining that because suppression hearings involve the determination of preliminary questions concerning the admissibility of evidence, the language of the current rules indicates that the rules of evidence (except privileges) no longer apply to suppression hearings); *see also Ford v. State*, 305 S.W.3d 530, 538, 539 (Tex. Crim. App. 2009) (explaining that a suppression hearing is an "informal hearing in which the trial judge, in his discretion, may use different types of information, conveyed in different ways, to resolve the contested factual or legal issues"; "[a] trial judge may use his discretion in deciding what type of information he considers appropriate and reliable in making his pre-trial ruling"; and a trial judge does "not abuse his discretion in relying upon an unsworn hearsay document"). Therefore, even if the testimony at issue was hearsay, the trial court did not abuse its discretion in relying on it.

In his second issue, Garcia argues that Baker did not have reasonable suspicion to justify detaining him, because he was merely the driver of the car in which Kermit Compton, the suspect, was a passenger. In response, the State emphasizes that Garcia would have an officer

turn a blind eye to the fact that Garcia was driving his vehicle to a location where the information received indicated a drug deal was about to occur.

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 21 (1968), an officer has the right to briefly detain and investigate a person when the officer has a reasonable suspicion supported by facts that the person is, has been, or will be engaged in criminal activity. *See State v. Sheppard*, 271 S.W.3d 281, 287 (Tex. Crim. App. 2008); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). The reasonableness of an investigative detention turns on the totality of the circumstances in each case. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

Here, the officers knew Compton would be arriving at a specific location within approximately fifteen minutes to sell marijuana to Gonzales. When the officers arrived at that location, they saw a parked car. As they drove past, Investigator Baker recognized one of the passengers in the parked car as Compton. Considering the totality of the circumstances, the officers had reasonable suspicion to stop the vehicle and detain the occupants of the vehicle for purposes of conducting a *Terry* stop.

In his third issue, Garcia argues that there was no probable cause to justify the search of his vehicle. In *Carroll v. United States*, 267 U.S. 132, 153 (1925), the Supreme Court established the automobile exception to the Fourth Amendment's warrant requirement, holding that officers, without violating the Fourth Amendment, could conduct a warrantless search of a vehicle if they had probable cause to believe the vehicle contained contraband. Probable cause requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may be contraband or stolen property or useful as evidence of a crime. *Id.* at 162. That there may be an innocent explanation for the set of facts does not defeat a finding of probable cause:

> [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands ... In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts.

*Eisenhauer v. State*, 678 S.W.2d 947, 954 (Tex. Crim. App. 1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983)) (alteration in original), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991).

Here, the officers had probable cause to search the vehicle. Investigator Baker witnessed a known, credible informant make arrangements for a drug delivery at the informant's home in approximately fifteen minutes. When the officers arrived at the informant's home, Investigator Baker saw a parked vehicle and recognized Compton, the person whom the informant had called to purchase the illegal drugs, as one of the occupants of the parked car. Garcia, the driver of the parked car, then turned on the headlights and attempted to drive away, prompting the officers to stop the vehicle. Given the totality of circumstances, the officers could reasonably believe that the marijuana was located either on the person of Compton, on the person of one of the other occupants, or in the vehicle itself. Investigator Baker first conducted a pat-down search of all three occupants, but did not feel evidence of illegal drugs. He then searched the car and noticed the three-pound coffee can. *See Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) (reiterating that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," officers may without a warrant search "any area of the vehicle in which the evidence might be found"); *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (explaining that when "there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one").

In his fourth issue, Garcia argues that the manner of the search of the coffee can was unreasonable and violated the Fourth Amendment because the officer destroyed the coffee by placing his bare finger in the coffee grounds. According to Garcia, "[e]ven if the search of [Garcia]'s car was reasonable, when the officer placed his hand into the coffee, the search became unreasonable." Garcia argues that merely having goods "in an automobile does not give the police carte blanche to search [the goods] by probing them with their fingers. That concept itself is unreasonable."[1]

Without commenting on whether the coffee was, in fact, "destroyed," we note that while the destruction of property in carrying out a search is not favored, destroying property does not necessarily violate one's constitutional rights. Instead the standard is whether the destruction of property was reasonably necessary to effectively execute the search. *See Dalia v. United States*, 441 U.S. 238, 258 (1979) (recognizing that "officers executing search warrants on occasion must damage property in order to perform their duty"); *Tarpley v. Greene*, 684 F.2d 1, 9 (D.C. Cir. 1982) ("The touchstone, however, is reasonableness; destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment."). As noted, the officer had probable cause to believe that the vehicle contained marijuana, and the coffee can was the right size for the amount of marijuana ordered. Placing his finger inside an inexpensive can of coffee grounds to see whether marijuana was indeed inside the can was not unreasonable and did not violate Garcia's constitutional rights. *See United States v. Santana-Aguirre*, 537 F.3d 929, 933 (8th Cir. 2008) (holding that destruction of large, plain, and inexpensive candles was not unreasonable because the officer had probable cause to believe the candles contained contraband), *cert. denied*, 129 S. Ct. 2051 (2009); *United States v. Alverez*,

---

[1] We note that Garcia cites no legal support for this proposition. Garcia does point to the officer's testimony that he would not drink coffee that had been tainted by someone placing his finger in the coffee grounds.

235 F.3d 1086, 1089 (8th Cir. 2000) (holding that because officers had probable cause to believe the spare tire contained contraband, "they could lawfully complete a full and thorough search of the tire, including dismantling or damaging it").

In his final issue, Garcia argues that "[b]y placing his bare hand in the coffee, the police officer destroyed consumable property" in violation of the Takings Clause of the Fifth Amendment to the Constitution.[2] However, "[w]hen property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006); *see also Amerisource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) (explaining that under its inherent police power, a state had the ability to seize and retain property to be used as evidence in a criminal prosecution, and property seized and retained pursuant to this police power is not taken for a public use in the context of the Takings Clause), *cert. denied*, 129 S. Ct. 1611 (2009); *Rhaburn v. United States*, 88 Fed. Cl. 310, 313 (2009) (same). "The same rule applies even if the property is seized as evidence in a criminal investigation or as the suspected instrumentality of a crime, but is ultimately returned to the owner either because the government does not pursue forfeiture proceedings or because the owner prevails in a forfeiture action." *Arcadia*, 458 F.3d at 1331-32; *see also Amerisource*, 525 F.3d at 1154 (holding that government's decision to hold pharmaceutical drugs past their expiration date did not result in a compensable taking under the Constitution because "[o]nce the government has lawfully seized property to be used as evidence in a criminal prosecution, it has

---

[2] We note that Garcia also cites Article I, section 19 of the Texas Constitution, but does not explain how the Texas Constitution provides more protection than the United States Constitution. Therefore, to the extent that the Texas Constitution might provide more protection than the United States Constitution, Garcia has inadequately briefed the issue. *See* TEX. R. APP. P. 38.1(i).

wide latitude to retain it so long as the investigation continues, regardless of the effect on that property").

## CONCLUSION

We affirm the judgment of the trial court.


Karen Angelini, Justice

PUBLISH