

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00692-CR

The **STATE** of Texas,
Appellant

v.

Amber Suzanne **HNEIDY**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR120210
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  June 26, 2013

AFFIRMED

This appeal arises from the trial court's order granting Appellee Amber Suzanne Hneidy's motion to suppress evidence. On appeal, the State argues that the trial court erred (1) by refusing to consider all the evidence presented, (2) by applying the incorrect burden of proof to the State, (3) by failing to apply the standard for reasonable suspicion objectively, and (4) by incorrectly determining that under the totality of the circumstances Officer Eubank did not have reasonable suspicion to stop Appellee.

**BACKGROUND**

On the night of January 14, 2012, Frank Donnell called the Kerrville Police Department to report an allegedly drunk driver in front of him that he believed needed to be pulled over. Officer Ben Eubank responded to the call. Upon seeing a vehicle fitting the description he received from dispatch, Officer Eubank made a U-turn and caught up with the vehicle to observe its driving behavior. Officer Eubank pulled Appellee's vehicle over for failing to continuously signal 100 feet before conducting a right-hand turn.

Appellee was arrested and charged with the offense of driving while intoxicated. Appellee filed a motion to suppress challenging whether Officer Eubank had reasonable suspicion to stop Appellee's vehicle. The evidence at the suppression hearing consisted of testimony from Donnell and Officer Eubank, as well as Officer Eubank's report and a video from his patrol car. Officer Eubank testified that he did not witness Appellee violate any traffic laws until the vehicle approached a parking lot where it failed to continuously signal 100 feet before conducting a right-hand turn. He specifically stated that his "probable cause for the stop was the violation of the fail to signal 100 feet before the turn." The video from Officer Eubank's patrol car begins shortly before his U-turn to pursue Appellee. In the video, Officer Eubank follows Appellee for approximately one minute before she activates her right turn signal. The video shows Appellee's turn into the parking lot where she is stopped by Officer Eubank.

At the conclusion of the suppression hearing, the trial court granted Appellee's motion to suppress. Thereafter, the trial court issued written findings of fact and conclusions of law in support of its ruling:

**II. Findings of Fact**

. . . .

13. Officer Eubank did not see any alleged violations until the vehicle approached the McDonald's parking lot.

. . . .

17. The Defendant's movements while changing lanes and driving were done safely.

18. The Defendant did signal before she turned into the McDonald's parking lot.

. . . .

20. The Officer testified his alleged reasonable suspicion to stop the Defendant's vehicle was not signaling within 100 feet of turning. This assertion was not supported by the video.

21. The video introduced into evidence does not support the Officer's testimony concerning the alleged reason for the stop.

22. Officer Eubank does not really know the distance of how far the Defendant drove with her turn signal on before she turned. Officer Eubank never measured the distance.

23. The Court finds the video offered into evidence as State's exhibit #2 as the most credible evidence.

. . . .

25. The only reason Officer Eubank testified he pulled over the Defendant was allegedly not signaling within 100 feet of a turn. . . .

## III. Conclusions of Law

1. Officer Ben Eubank lacked reasonable suspicion to stop the Defendant's vehicle . . . .

The State appeals the trial court's ruling.

### REASONABLE SUSPICION

The State argues Officer Eubank had reasonable suspicion to stop Appellee based on an objective view of the totality of the circumstances, and the trial court thus erred in granting Appellee's motion to suppress.

### A. Standard of Review

In a motion to suppress evidence based on an alleged violation of the Fourth Amendment, "the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. A defendant satisfies this burden by establishing that a search or seizure occurred

without a warrant." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (footnote omitted). Here, the State stipulated that Appellee's arrest was made without a warrant. "Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable." *Id.* Therefore, we must determine whether the State established that Officer Eubank's stop of Appellee was reasonable. *See id.*

**B. Reasonable Suspicion**

Under the Fourth Amendment to the United States Constitution, a warrantless detention of an individual must be justified by reasonable suspicion. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011); *Garcia v. State*, 327 S.W.3d 243, 248 (Tex. App.—San Antonio 2010, no pet.); *see Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492; *see Garcia*, 327 S.W.3d at 248. We use an objective standard that disregards the officer's subjective motive or intent and "looks solely to whether an objective basis for the stop exists" based on the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *see Terry*, 392 U.S. at 21–22.

"The federal courts and our lower Texas courts have consistently held that a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, do not run afoul of the Fourth Amendment." *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)); *accord Arizpe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.). "The level of corroboration required . . . is 'considerably less than proof of wrongdoing by a preponderance of the evidence,'" but an officer's mere "[o]bservation of easily obtained facts and conditions (such as identifying

information) will generally not provide the requisite corroboration." *Arizpe*, 308 S.W.3d at 93; *see Alabama v. White*, 496 U.S. 325, 332 (1990).

"In evaluating the totality of the circumstances, we use a bifurcated standard of review. We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor." *Ford*, 158 S.W.3d at 493; *accord Martinez v. State*, 275 S.W.3d 29, 34 (Tex. App.—San Antonio 2008, pet. struck). "If the trial [court] makes express findings of fact, we view the evidence in the light most favorable to [the trial court's] ruling and determine whether the evidence supports these factual findings." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review de novo "[w]hether the facts known to the officer amount to reasonable suspicion." *See Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

## C. Analysis

In its appellate brief, the State argues Officer Eubank had reasonable suspicion to stop Appellee because (1) Appellee failed to yield to Donnell's vehicle, (2) Donnell observed Appellee driving unsafely and/or recklessly, and (3) Appellee failed to signal 100 feet before turning.

### 1. Failing to Continuously Signal for 100 Feet Before Turning

In its findings of fact, the trial court stated that "Officer Eubank does not really know the distance of how far the Defendant drove with her turn signal on before she turned. Officer Eubank never measured the distance." However, Officer Eubank did not need to know the exact distance Appellee traveled with her turn signal on before she turned. *See Wells v. State*, No. 02-08-380-CR, 2009 WL 1905368, at *3–4 (Tex. App.—Fort Worth July 2, 2009, no pet.) (mem. op., not designated for publication). Moreover, the question is not whether, in hindsight, Appellee actually failed to continuously signal for 100 feet before turning; rather, it is whether an officer could have

reasonably concluded based on specific, articulable facts and rational inferences from those facts that Appellee failed to continuously signal for 100 feet. *See Ford*, 158 S.W.3d at 492; *State v. Ellis*, No. 04-12-00589-CR, 2013 WL 980164, at *3 (Tex. App.—San Antonio Mar. 13, 2013, no. pet.) (mem. op., not designated for publication); *State v. Sander*s, No. 04-11-00392-CR, 2011 WL 4828817, at *1 (Tex. App.—San Antonio Oct. 12, 2011, pet. ref'd) (mem. op., not designated for publication); *Wells*, 2009 WL 1905368, at *3–4.

This case is analogous to *Ford v. State*. In *Ford*, an officer stopped Ford for following another car too closely in violation of section 545.062(a) of the Texas Transportation Code. *Ford*, 158 S.W.3d at 490. During the suppression hearing, the officer testified that he stopped Ford for "[f]ollowing too close." *Id.* at 491. The appellate court stated that the officer "'testified that he saw [Ford] following another car at a distance that [the officer] believed was insufficient and, thus, in violation of the statute.'" *Id.* at 493 (first alteration in original). The Court of Criminal Appeals reasoned that

> [w]hile this may be a permissible interpretation of [the officer's] "following too close" testimony, it does not change its conclusive character into specific, articulable facts. And attempting to do so requires a strained reading of the record. As indicated from [the officer's] testimony, [the officer] only stated that Ford was "following too close." The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude that Ford actually was, had been, or soon would have been engaged in criminal activity. Instead, the trial court was presented only with a conclusory statement that Ford was violating a traffic law. We do not quarrel with the notion that [the officer] may have in fact believed that Ford was following another car too closely. Nor do we dispute that the trial judge is free to believe or disbelieve [the officer's] testimony. But without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable.

*Id.* (footnote omitted). The court further explained that "[m]ere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Id.*

Here, Officer Eubank testified that he stopped Appellee for failing to signal 100 feet before a turn. The Texas Transportation Code provides, "An operator intending to turn a vehicle right or

left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011); *see Elias*, 339 S.W.3d at 671 n.3. As in Ford, we are presented with an officer's conclusory statement that Appellee violated a traffic law. *See Ford*, 158 S.W.3d at 493. Although the record contains a video from Officer Eubank's patrol car showing that Appellee signaled before she turned into a parking lot, the record reveals an absence of any specific, articulable facts that would allow an officer to reasonably conclude that Appellee signaled for less than 100 feet before her turn.[1] *See id.* at 492–93. Therefore, the State failed to meet its burden to that Officer Eubank could have reasonably concluded that Appellee failed to continuously signal 100 feet. *See id.* at 492; *Garcia*, 327 S.W.3d at 248.

### 2. *Failure to Yield to Traffic and Unsafe and Reckless Driving*

The trial court found that the only reason Officer Eubank testified he pulled over Appellee was for her allegedly not signaling within 100 feet of a turn. However, "it does not matter whether the objective facts support a detention for the specific offense [Officer Eubank] intended to detain [Appellee] for as long as the facts otherwise objectively support a detention for *some* offense." *See Elias*, 339 S.W.3d at 675. Therefore, we next address the State's argument that Officer Eubank had reasonable suspicion to stop Appellee based on her alleged failure to yield to Donnell's vehicle and Donnell's observation that Appellee was driving unsafely and/or recklessly.

Donnell testified that a newer model, red Mustang pulled out, "[n]o yield at all. Just pull[ed] out. And then whoever was driving that vehicle, swerve, swerve, swerve, getting every other lane." He testified that his father, who was driving, had to slam on the brakes to avoid rear-ending Appellee. Donnell also stated that he witnessed the vehicle "swerving over into other lanes, back and forth, weaving in and out of traffic" without signaling. He testified that the vehicle would

---

[1] Based on our review of the video, we are unable to discern the distance Appellee traveled using her turn signal before she turned into the parking lot.

speed up and slow down, and that the behavior he described went on the entire time he followed the vehicle. On cross-examination, Donnell could not recall whether he relayed all of this information to the dispatcher.

Assuming without determining that Donnell's observations were reliable, in order for them to serve as a basis for Officer Eubank's stop, they must be sufficiently corroborated. *See Brother*, *1*66 S.W.3d at 257, 259; *Arizpe*, 308 S.W.3d at 92. In its brief, the State asserts that "Officer Eubank was able to corroborate the type of vehicle, location, and direction of travel." Corroboration of such identifying information does not provide the requisite corroboration. *See Arizpe*, 308 S.W.3d at 93; *White*, 496 U.S. at 332. Moreover, Officer Eubank testified that Appellee was not all over the road, never left her lane of traffic, and that when she changed lanes she did so safely and used her turn signal. Officer Eubank testified that he did not corroborate any of the information that was relayed to him by dispatch. He did note, however, that Appellee tended to drift toward the inside of the lane, but never crossed the line, and that this was the only behavior he saw that matched the behavior described by dispatch. The video from Officer Eubank's patrol car and his written report confirm his testimony. Viewed objectively and in the light most favorable to the trial court's ruling, this evidence does not constitute specific, articulable facts that would lead Officer Eubank to reasonably conclude that Appellee was driving unsafely and reckless or that she failed to yield to traffic. *See Hamal*, 390 S.W.3d at 306; *Ford*, 158 S.W.3d at 492; *Garcia*, 327 S.W.3d at 248.

## CONCLUSION

The State argues that the trial court erred (1) by refusing to consider all the evidence presented, (2) by applying the incorrect burden of proof to the State, (3) by failing to apply the standard for reasonable suspicion objectively, and (4) by incorrectly determining that under the totality of the circumstances Officer Eubank did not have reasonable suspicion to stop Appellee.

As discussed herein, the State was not required to prove that Appellee actually violated a traffic law. Nevertheless, having reviewed all the evidence, including the written report, in the light most favorable to the trial court's ruling, we conclude that the State failed to meet its burden to show specific, articulable facts that, when combined with rational inferences therefrom, could have led Officer Eubank to reasonably conclude that Appellee was engaged in any criminal activity. Because Officer Eubank lacked reasonable suspicion to stop Appellee, the trial court did not err in granting Appellee's motion to suppress. Accordingly, we affirm the trial court's order.

Patricia O. Alvarez, Justice

PUBLISH