

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00302-CR

Nicanor C. **SANCHEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR7395
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 17, 2019

AFFIRMED

A Bexar County jury found Appellant Nicanor Sanchez guilty of one count of driving while intoxicated and one count of driving while intoxicated with a child passenger. The trial court assessed punishment at five-years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $1,500.00 fine. The trial court suspended and probated the confinement for a period seven years and placed Sanchez on community supervision.

On appeal, Sanchez contends the trial court erred in failing to grant his motion to suppress because the officer did not have reasonable suspicion to initiate the traffic stop and the trial court erred in denying his requested jury instruction. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2016, after drinking a twenty-four-ounce beer, Sanchez drove from a convenience store on Commerce Street to his residence. Sanchez testified that he and his girlfriend were at the convenience store when his girlfriend became sick and started throwing up in the truck; as a result, Sanchez had to drive the truck. At that time, Sanchez acknowledges he was taking approximately twelve or thirteen medications.

Sanchez was traveling northbound on NW 24th Street as he approached the intersection of 24th Street and Poplar Street. Sanchez moved into the left-turn-only lane, but did not use his signal. Across the intersection, San Antonio Police Sergeant Brian Sullivan witnessed Sanchez change lanes without signaling and then turn left onto Poplar without signaling.

Sergeant Sullivan turned right onto Poplar and followed a very slow-moving Sanchez for approximately one minute. During that time, Sergeant Sullivan witnessed Sanchez cross Poplar's midline and saw Sanchez drive on the left side of the roadway on several occasions. The officer turned on his emergency lights and Sanchez pulled into his driveway.

When Sergeant Sullivan approached the door of Sanchez's vehicle, the officer immediately noticed the smell of alcohol, Sanchez's words were slurred, and his eyes were bloodshot. Sanchez acknowledged having been drinking. Sanchez agreed to perform the field sobriety tests, but contends he told the officer that he had recently suffered a stroke and that he needed his cane which was on the patio. Sanchez contends the officer refused to bring him the cane. Sanchez further contends that given his medical condition, he would not have been able to do the one-leg stand, regardless of whether he had consumed the twenty-four-ounce can of beer. Based on Sanchez's

inability to perform field sobriety tests, Sanchez was arrested for driving while intoxicated. Sergeant Sullivan requested a search warrant for a blood specimen; the test results ultimately revealed a blood alcohol content of 0.157.

Sanchez's case was called for trial on January 11, 2018. After the trial court denied the motion to suppress the matter was heard before a Bexar County jury. Sanchez stipulated to two prior DWI convictions and the jury found Sanchez guilty of driving while intoxicated and one count of driving while intoxicated with a child passenger. The trial court assessed punishment at five-years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $1,500.00 fine. The trial court suspended and probated the confinement for a period of seven years and placed Sanchez on community supervision.

On appeal, Sanchez contends the trial court erred in failing to grant his motion to suppress because the officer did not have reasonable suspicion to initiate the traffic stop and the trial court erred in denying his requested article 38.23 jury instruction.

### MOTION TO SUPPRESS

### A.     Arguments of the Parties

Sanchez contends that because the officer did not have reasonable suspicion to initiate the traffic stop, the trial court erred in failing to suppress the evidence obtained following the stop. The State concedes Sanchez was arrested without a warrant, but counters Sergeant Sullivan witnessed Sanchez commit two traffic offenses and therefore Sergeant Sullivan possessed reasonable suspicion to initiate a traffic stop.

### B.     Standard of Review

In a motion to suppress evidence based on a Fourth Amendment violation, "the defendant bears the initial burden of producing evidence rebutting the proper police conduct presumption. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant."

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (footnote omitted); *accord State v. Hneidy*, 510 S.W.3d 458, 462 (Tex. App.—San Antonio 2013, pet. ref'd). "Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search was conducted pursuant to a warrant or was reasonable." *Ford*, 158 S.W.3d at 492 (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)); *accord Hneidy*, 510 S.W.3d at 462. We must, therefore, determine whether the State established that Sergeant Sullivan's traffic stop of Sanchez was reasonable.

Reasonable suspicion is determined under the totality of the circumstances. *Ford*, 158 S.W.2d at 493; *Hneidy*, 510 S.W.3d at 463. An appellate court utilizes a bifurcated standard of review affording "almost total deference to the trial court's determination of historical facts [but] review[ing] de novo the trial court's application of law to facts not turning on credibility and demeanor." *Ford*, 158 S.W.3d at 493 (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)); *Hneidy*, 510 S.W.3d at 463. "Whether there was reasonable suspicion to detain [Sanchez] is not a function of [Sergeant Sullivan's] demeanor or credibility, but of the legal significance of the essentially uncontested facts. The ultimate question of whether [Sergeant Sullivan] was indeed 'justified in stopping' [Sanchez's vehicle], we review *de novo*." *Leming v. State*, 493 S.W.3d 552, 562 (Tex. Crim. App. 2016) (footnote omitted) (quoting *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)). If the trial court's ruling "is correct under any applicable theory of law," it must be sustained. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018).

## C.     Reasonable Suspicion

The Fourth Amendment protects against unreasonable searches without a warrant. U.S. CONST. amend. IV. "[N]ecessarily swift police action predicated upon the on-the-spot observations of the officer . . . must be tested by the Fourth Amendment's general proscription

against unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see also Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36–37 (Tex. Crim. App. 2017). "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search . . . against the invasion which the search . . . entails.'" *Terry*, 392 U.S. at 21 (quoting *Camara v. Mun. Court*, 387 U.S. 523, 534–35, 536–37 (1967)).

Here, the only question is whether Sergeant Sullivan had "specific, articulable facts that, when combined with rational inferences therefrom, lead him to reasonably conclude" that Sanchez was engaged, or about to be engaged, in criminal activity. *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013) (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)); *see also Hneidy*, 510 S.W.3d at 462–63 (quoting *Ford*, 158 S.W.3d at 492) (assessing reasonableness of police conduct under "an objective standard that disregards the officer's subjective motive or intent and 'looks solely to whether an objective basis for the stop exists' based on the totality of the circumstances").

D.    **Vehicle Stops Pursuant to Traffic Violations**

"In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred." *Lerma*, 543 S.W.3d at 190 (citing *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014)); *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX. TRANSP. CODE ANN. § 543.001 ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle.").

Sergeant Sullivan testified he witnessed Sanchez commit two distinct traffic violations: (1) failure to drive on the right side of the road in violation of section 545.051(a)(2); and (2) failure to signal lane change in violation of section 545.104(a) of the Texas Transportation Code. *See* TEX.

TRANSP. CODE ANN. § 545.051(a)(2) ("An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless . . . an obstruction necessitates moving the vehicle left of the center of the roadway."); *id*. § 545.104 ("(a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.; (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.").

**E.      Motion to Suppress Hearing**

The testimony during the motion to suppress hearing was limited to two witnesses, Sergeant Sullivan and Nicanor Sanchez, and the dashcam recording from Sergeant Sullivan's patrol vehicle.

*1.      Sergeant Brian Sullivan*

On February 8, 2016, shortly after midnight, San Antonio Police Sergeant Brian Sullivan was traveling southbound on NW 24th Street when he witnessed two vehicles traveling northbound on NW 24th Street. Sergeant Sullivan testified that "[o]ne of the vehicles changed into the left turn lane without signaling." After the light changed, and the left turn traffic signal was illuminated, the same vehicle proceeded to turn left, heading westbound on Poplar Street, without signaling—a violation of section 545.104(a).

Sergeant Sullivan watched the events from across the intersection, while waiting at a traffic light, facing southbound. Intending to conduct a traffic stop, Sergeant Sullivan testified that he "looked to make sure there was no traffic—coming southbound on 24th Street in the right lane and I turned to follow [the vehicle]." The officer described Sanchez's vehicle as "going very slow, very slow down the street and also at several points, crossed over the midline of the roadway onto the other side of the road." Although the road did not have an actual line painted down the middle of the roadway, Sergeant Sullivan testified the roadway was not a residential roadway and a driver

was required to stay to the right of the road. At that point, after having observed the vehicle, the officer conducted a traffic stop.

A recording of the traffic stop, recorded from the dashcam recorder of Sergeant Sullivan's patrol vehicle, was admitted without objection.

During cross-examination, trial counsel asked several questions regarding the officer's failure to initiate a stop immediately after witnessing Sanchez change lanes without signaling. Sergeant Sullivan explained, "[m]y intention was to conduct a traffic stop after observing for . . . a few moments."

Trial counsel stressed that because the roadway did not actually contain a painted center line, it was impossible to determine when, or if, the vehicle crossed the center line. Trial counsel requested the officer point out each time Sanchez "crossed over the center line of the roadway and got onto the opposite lane of traffic." Sergeant Sullivan explained it is a question of the "midline" of the roadway and the pavement serves as the boundaries. A little past the intersection of 27th Street and Poplar, the recording depicts Sanchez driving on the left side of the Poplar roadway. Sergeant Sullivan testified Sanchez remained on the left side of the roadway for approximately forty seconds; and, although he did not impede any motorists or hit any vehicles, Sanchez did hit a trash can as he pulled his vehicle into his driveway.

Throughout his cross-examination, trial counsel questioned Sergeant Sullivan's failure to initiate a stop of Sanchez's vehicle immediately after Sergeant Sullivan allegedly witnessed Sanchez turn left on Poplar without signaling. Sergeant Sullivan explained, "I wanted to observe the vehicle and see what the driving factors were, if that was just the only violation or if there was something else going on." He further opined that officers possess discretion; and, if he had not seen any additional dangerous behavior, he would have had the discretion to decide not to stop the

vehicle. "You have to look at the whole circumstance, what's going on, what he's doing, what I'm doing, where we're at, the time of night, the traffic around you."

*2. Nicanor C. Sanchez, Jr.*

After introducing himself, trial counsel asked Sanchez to characterize the road conditions on Poplar Street.

> It's not a straight street and there's a lot of potholes like indicated on that picture right there. So the edges of the street by the curb, they go down so if you get too close to the curb, it pulls your car. They're bad. They're not great condition, but they're bad conditions.

After watching the video, Sanchez acknowledged he drove a "little towards the middle of the lane." However, Sanchez explained his actions were an attempt to avoid the potholes in the roadway. Where Sergeant Sullivan alleged Sanchez was wrongfully on the left side of the roadway, Sanchez testified the road curved; and, if he had not veered to the left, his vehicle would have struck the curb.

During cross-examination, Sanchez could not remember whether he used his turn signal on the night in question. He acknowledged the video was not very clear, and at the points he could see his vehicle clearly, he did not "see a blinker flashing."

*3. Trial Court's Findings of Fact and Conclusions of Law*

The trial court denied Sanchez's motion to suppress the evidence. In a signed order on November 6, 2018, the trial court made the following relevant findings of fact and conclusions of law:

- Sergeant Sullivan witnessed Sanchez change lanes without signaling and make a left turn without signaling.
- The dash-cam video from Sergeant Sullivan's patrol vehicle shows Sanchez's vehicle turning without using its turn signal and cross the middle of the road.
- Sanchez's argument that a one-minute delay between the initial traffic violation and the traffic stop rendered the traffic stop illegal was meritless.

- The evidence obtained as a result of the traffic stop was admissible under both the Texas and United States Constitutions and under 38.23 of the Texas Code of Criminal Procedure.
- Having found the defendant violated section 545.104 of the Texas Transportation Code, the officer had reasonable suspicion to stop the vehicle.

**E.      Analysis**

We turn first to Sergeant Sullivan's testimony that Sanchez turned left onto Poplar in violation of section 545.104(b).  *See* Tex. Transp. Code Ann. § 545.104.

The testimony is undisputed that when Sanchez turned left, from the northbound turn-lane of NW 24th Street headed westbound onto Poplar Street, he did not use his signal as required by section 545.104(a) and did not use his signal 100 feet before the intersection of NW 24th Street and Poplar Street as required by section 545.104(b).  *See* Tex. Transp. Code Ann. § 545.104.  Even considering Sanchez's argument that subsection (b) is not applicable because the length of the turn-only lane is less than 100 feet, Sanchez fails to recognize Sanchez's testimony conceded the violation of subsection (a) when his vehicle made the turn without signaling.  At this point, the only question is whether Sergeant Sullivan had reasonable suspicion to initiate a stop of Sanchez based on a violation of the Transportation Code.

The trial court's findings of fact support that on February 8, 2016, Sanchez approached the light from NW 24th Street and made a left turn onto Poplar without signaling.  Sergeant Sullivan testified he witnessed Sanchez approach the intersection and make the left turn—without using his turn signal.  The dashcam recording supports the officer's testimony and Sanchez testified he did not remember turning his turn-signal on and he could not see his turn-signal on in the dashcam recording.  Section 545.104 provides the operator ***shall*** use a turn signal.  *See* Tex. Transp. Code Ann. § 545.104 (emphasis added).

We conclude Sergeant Sullivan had reasonable suspicion to believe a traffic violation occurred and was justified in stopping Sanchez's vehicle and we overrule Sanchez's first two issues on appeal.

*See Lerma*, 543 S.W.3d at 190. Because we must sustain the trial court's ruling if it is correct under any applicable theory of law, we need not address the other alleged traffic violations. *See id*.

We next address Sanchez's contention the trial court erroneously denied his requested jury instruction.

### JURY INSTRUCTION

#### A.   Arguments of the Parties

Sanchez argues the trial court erred in failing to include his requested jury instruction in accordance with article 38.23 of the Texas Code of Criminal Procedure. The State counters there was no issue of fact and thus nothing to warrant the jury instruction.

#### B.   Texas Code of Criminal Procedure Article 38.23

Texas Code of Criminal Procedure article 38.23(a) provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

An instruction "under Article 38.23(a) is limited to disputed issues of fact that are material to [the defendant's] claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007); *see also Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) ("There is, of course, nothing to instruct the jury about if the suppression question is one of law only, and there is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue.").

A defendant must satisfy three requirements before being entitled to the submission of a jury instruction under article 38.23(a):

(1)   The evidence heard by the jury must raise an issue of fact;

(2)   The evidence on that fact must be affirmatively contested; and

(3)   That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden*, 242 S.W.3d at 510; *accord Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

"To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question." *Madden*, 242 S.W.3d at 513. Simply raising the issue via cross-examination is insufficient to create a factual dispute for purposes of an article 38.23(a) instruction. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *Madden*, 242 S.W.3d at 514.

If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Madden*, 242 S.W.3d at 510. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Siddiq v. State*, 502 S.W.3d 387, 405 (Tex. App.—Fort Worth 2016, no pet.).

## C.      Proceedings at Trial

The only evidence presented during the trial regarding whether Sanchez violated the Transportation Code came from two sources: (1) Sergeant Sullivan testified Sanchez turned left without signaling, and (2) the recording depicted Sanchez turning left without signaling.

Although trial counsel attempted to cast doubt on Sergeant Sullivan's credibility, nothing in the officer's testimony raised a fact issue that was affirmatively contested. *See Madden*, 242 S.W.3d at 510. Sanchez argues the dashcam recording is not clear enough to support the State's claim that Sanchez turned left without signaling. Sanchez misapplies the rationale in *Madden*. *See*

*id*. The *Madden* Court specifically explained that "[o]nly if the video clearly showed that appellant affirmatively *did not do something that [the trooper] said that he did do*, and the video clearly would have shown that conduct if it had occurred, would there be some affirmative evidence of a disputed historical fact." *Madden*, 242 S.W.3d at 516 (emphasis added). For *Madden* to apply in this case, Sullivan's dashcam recording would have to show Sanchez actually *used* his turn-signal—which is not the case.

Sanchez contends the State was unable to articulate which "law was broken by Mr. Sanchez's driving actions." As described above, the State alleged, and the trial court made findings of fact, Sanchez violated section 545.104(a) of the Texas Transportation Code. Sergeant Sullivan testified, the dashcam recording supports, and the trial court affirmatively found that Sanchez made a left turn without using a turn-signal. There was no testimony disputing Sanchez's failure to use his signal.

Whether Sanchez made a lane change and whether he swerved, drifted, or veered onto the side of the road are not factual issues that are material to the lawfulness of the challenged conduct—turning left without signaling. *See Madden*, 242 S.W.3d at 510. During cross-examination, trial counsel questioned Sergeant Sullivan extensively regarding the forty-second to one-minute delay between when Sergeant Sullivan first witnessed Sanchez change lanes without signaling and when the officer ultimately initiated the traffic stop in Sanchez's driveway. The officer explained how he turned his patrol car from the southbound lane on NW 24th Street onto westbound Poplar. He began to follow Sanchez to "determine other factors." Sanchez was driving very slowly, and he crossed over the midline of the roadway. These actions confirmed the officer's decision to initiate the traffic stop. The trial court concluded the argument that the "one-minute delay between the initial traffic violation and the traffic stop rendered the traffic stop illegal was

meritless." *Cf. State v. Dixon*, 206 S.W.3d 587, 591 (Tex. Crim. App. 2006) (concluding three miles after violation diminished officers' credibility).

### D.     Analysis

The record does not support, and Sanchez did not direct the trial court's attention to the existence of any evidence supporting an issue of fact that was affirmatively contested regarding whether Sanchez turned left onto Poplar without signaling. *See Madden*, 242 S.W.3d at 510. Without such evidence, Sanchez was not entitled to a jury instruction under article 38.23(a). *See id*. Accordingly, we cannot conclude the trial court erred in denying Sanchez's requested jury instruction and we overrule Sanchez's third issue.

### CONCLUSION

Because the evidence is undisputed that Sergeant Sullivan witnessed Sanchez turn left onto Poplar without signaling, the officer had reasonable suspicion to believe a traffic violation had occurred and was justified in stopping Sanchez's vehicle. Additionally, because the record does not contain evidence raising a fact issue affirmatively contesting the conduct in question, Sanchez was not entitled to an article 38.23(a) jury instruction. We therefore affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH